UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LYNN JONES,

        Plaintiff,

Case No. 1:21-cv-931

Hon. Janet T. Neff

v.

P. JONES,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Michael Lynn Jones ("plaintiff") is a prisoner in the custody of the Michigan Department of Corrections ("MDOC"). This lawsuit involves an incident at the Muskegon Correctional Facility ("MCF"). Plaintiff's amended complaint names one defendant, MCF vocational educator P. Jones (later identified as Patrick Jones). *See* Amend. Compl. (ECF No. 10). This matter is now before the Court on defendant's motion to dismiss (ECF No. 37).

    **I.**    **Plaintiff's amended complaint**

The amended complaint consists of two parts: a cursory handwritten amended complaint (PageID.30-33) and a typewritten amended complaint set out in numbered paragraphs (PageID.34-38). For purposes of this lawsuit, the Court construes the typewritten amended complaint as the operative pleading. The gist of plaintiff's claim is that defendant was deliberately indifferent to his serious medical needs when he failed to follow COVID-19 protocols on January 6, 2021. Specifically, plaintiff alleged that defendant violated his Eighth Amendment rights and acted with gross negligence under state law. Plaintiff set forth the following allegations.

1

Plaintiff is over 60 years old. Amend. Compl. at PageID.35. In 2005, plaintiff was diagnosed with type-2 diabetes mellitus, which put him at a heightened risk of arteriosclerosis. *Id*. On August 13, 2017, when plaintiff was 55 years old, he experienced a myocardial infarction and was admitted to a hospital the next day for a coronary artery bypass graft ("CABG"). *Id*. As a result of the CABG, plaintiff is "is always vulnerable to infections and, or viral disease, being that the integrity of Plaintiff Jones immune-system was severly [sic] compromised." *Id*. (emphasis omitted).

A few years later, in the Spring of 2020, the Coronavirus (COVD-19) pandemic swept across the country. *Id*.

> On March 23, 2020, the Governor of Michigan (Mrs. Gretchen Whitmer) issued Executive Order 2020-62 addressing the public health arising from the state of emergency mandating that MDOC implement institutional protocols consistent with guidelines set early on by Physicians, Public Health Officials, and the national Centers for Disease Control and Prevention (CDC)[.]

*Id*. On about July 27, 2020, MCF Warden Burt, notified the general population that the facility had encountered it's first COVID-19 case. *Id*. at PageID.36. Later that month, 197 prisoners were placed under quarantine. *Id*.

The incident at issue in this lawsuit allegedly occurred about six months later in January 2021:

> 19.) On January 6, 2021, MCF conducted Covid-19 testing for the whole facility. Given the under staffing of Medical personnel to administer covid-testing, and the sheer number of prisoners to be tested (1,400+ ), MCF Administration incorporated it's [sic] non-custody personnel to aid Medical personnel in Covid-19 test administration.
>
> [Paragraphs 20 and 21 omitted]
>
> 22.) When time came for testing in Unit 3 (Plaintiff [M.] Jones housing unit) the Unit Officer called each wing of the housing Unit seperately [sic] to receive a Covid test. Mr. M. Jones housing unit wing was ultimately called to the T.V. / Dayroom area for testing. Each wing consist of about 60

2

> prisoners. The T.V. / Dayroom capacity, where prisoners were required to wait for tested was thirty-six (36).
>
> 23.) Defendant [P.] Jones was assigned to the T.V. / Dayroom area to manage prisoner traffic and enforce Covid-19 protocals [sic] (social distancing-wearing mask). In spite or these clear mandates, prisoners were in the T. V. / Dayroom waiting for Covid testing, were not wearing mask or social distancing.
>
> 24.) While this conduct was taking place by prisoners from Plaintiff [M.] Jones wing, Defendant [P.] Jones did nothing to enforce the protocals [sic] on prisoners as required. Being that Plaintiff [M.] Jones is a medicallly [sic] vulnerable prisoner who has not transmitted Covid-19, Plaintiff [M.] Jones calmly walked over to Defendant [P.] Jones to ask if he was going to take control of the situation and enforce the the [sic] protocols mandated by the Governor and MDOC policy to mitigate the spread of the virus? 'Because the way that your doing this is all wrong.'
>
> 25.) Defendant [P.] Jones instantly became physically and verbally hostile, aggressive, and invective stating, 'You can't tell me how to do my job!' Plaintiff [M.] Jones asked Defendant [P.] Jones, 'not to yell at him and speak in that manner, for I do have the authority to enforce policy on another prisoners conduct [sic].
>
> 26.) Defendant [P.] Jones began to threaten Plaintiff [M.] Jones with drafting a false misconduct report and jumped up from his seat smacking and banging his hand on the table. Plaintiff [M.] Jones efforts in obtaining safety and protection as an obvious medically vulnerable high-risk prisoner were disregarded by Defendant [P.] Jones. Prisoners continued to congregate and commingle without any enforcement of mask and social distancing under the supervision of Defendant [P.] Jones, under conditions which is inimical to physical distancing, creating an even higher-risk for Plaintiff [M.] Jones to acquire Covid-19.

*Id*. at PageID.36-37 (emphasis omitted).

Plaintiff alleged two causes of action. First,

> The failure of defendant [P.] JONES to act on his knowledge of a substantial risk of serious harm to Plaintiff M. Jones as set forth above constituted a violation of the Eighth Amendment right to be free from *deliberate indifference* to safety.

*Id*. at PageID.37 (emphasis in original). Second,

3

> The actions of defendant [P.] JONES in failing to act on his knowledge of a substantial risk of serious harm to Plaintiff M. Jones constituted the tort of gross negligence under the law of Michigan[.]

*Id*. (emphasis in original).  For his relief, plaintiff seeks compensatory and punitive damages.

## II.     Defendant's motion to dismiss

Defendant's motion seeks dismissal on three grounds:

> . . . First, Plaintiff's claims are by qualified immunity because Defendant's alleged conduct, not enforcing COVID-19 protocols on a single occasion, did not violate the Constitution or a clearly established constitutional right.
>
> Second, Plaintiff fails to establish standing because his only asserted injury, a heightened risk of contracting COVID-19, is purely speculative.
>
> Third, Plaintiff's claim for gross negligence fails because it is not an independent cause of action and Plaintiff makes no allegations of ordinary negligence. To the extent that it is a cause of action, Defendant is not the proximate cause of Plaintiff's alleged injury. Moreover, Plaintiff impermissibly premises his gross negligence claim on the same set of facts on which he basis his Eighth Amendment claim, which is an intentional tort. Finally, this Court should decline to exercise jurisdiction over Plaintiff's pendent State-law claim for gross negligence because his only federal claim must be dismissed.

Defendant's Brief (ECF No. 38, PagID.142).

### A.     Eighth Amendment claim

### 1.     Legal standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff alleged that defendant was deliberately indifferent to his health and safety. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer*, 511 U.S. at 834. A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if

5

the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id*. at 8-9. The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence does not constitute an Eighth Amendment violation. *Id*. at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Stated another way, the plaintiff must prove that each defendant acted with a "sufficiently culpable state of mind, equivalent to criminal recklessness." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40) (internal quotation marks omitted).

2. **Standing**

As an initial matter, the Court will address the jurisdictional issue of standing. While defendant characterizes this motion as brought pursuant to Fed. R. Civ. P. 12(b)(6), a motion to dismiss for lack of standing is properly brought as a motion for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3). *See Crookston v. Johnson*, 370 F. Supp. 3d 804, 807 (W.D. Mich. 2018) ("Whether a party has Article III standing is properly an issue of a court's subject matter jurisdiction under Rule 12(b)(1)."); *Zurich Insurance Company v. Logitrans, Inc.*,

6

297 F.3d 528, 531 (6th Cir. 2002) ("Article III standing is a jurisdictional requirement that cannot be waived, and such may be brought up at any time in the proceeding. Fed. R. Civ. P. 12(h)(3).").

> Article III limits federal courts' jurisdiction to actual cases or controversies. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337, 136 S. Ct. 1540, 194 L.Ed.2d 635 (2016). The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to [those who] seek redress for a legal wrong." *Id*. at 338, 136 S. Ct. 1540. The "irreducible constitutional minimum of standing" requires (1) an injury in fact that is (2) fairly traceable to the defendant's conduct and (3) likely redressable by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992).

*R. K. by & through J. K. v. Lee*, 53 F.4th 995, 998 (6th Cir. 2022). A plaintiff must demonstrate standing "for each claim he seeks to press" and "each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (internal quotation marks omitted).

"To establish an Art. III case or controversy, a litigant first must clearly demonstrate that he has suffered an 'injury in fact.'" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). "The complainant must allege an injury to himself that is 'distinct and palpable,' as opposed to merely 'abstract,' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" *Id*. (internal citations and brackets omitted). Here, plaintiff alleged that on one occasion, defendant did not follow MDOC's COVID-19 protocols regarding face masking and social distancing which increased his risk of contracting COVID-19. *See* Amend. Compl. at PageID.36-37. Plaintiff's claim that defendant's actions may have exposed him to COVID-19 is insufficient to establish an injury in fact for purposes of standing. Plaintiff's amended complaint is based upon plaintiff's speculation that he was at risk for a possible injury. Such speculation does not suffice to establish standing. *See Lujan*, 504 U.S. at 560-61, 567. In addition, plaintiff does not allege any basis to award damages based on this speculative claim.

> Simply put, Plaintiff's fear that he was exposed to COVID-19 or might have contracted COVID-19 is not a concrete injury which can be redressed by an award of damages.

*Gaffney v. Artis*, No. 1:22-cv-275, 2023 WL 2753168 at *2 (W.D. Mich. April 3, 2023).[1]

For these reasons, plaintiff's amended complaint does not establish standing. Accordingly, plaintiff's Eighth Amendment claim should be dismissed for lack of subject matter jurisdiction.[2]

### B.    State law claim for gross negligence

Next, plaintiff's state law claim for gross negligence should be dismissed. The Court exercised its supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367, presumably because the claim was intimately related to the alleged § 1983 violations. *See* 28 U.S.C. § 1367(a) ("the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy"). Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction."  Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir.1998).  As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims."  *Musson Theatrical, Inc. v. Federal Express Corp.*, 89

---

[1] Other courts have reached a similar result. *See Bormuth v. Whitmer*, No. 2:20- CV-11399, 2020 WL 9258734 at *7 (Nov. 23, 2020), *R&R adopted*, 2021 WL 912395 (E.D. Mich. March 10, 2021) ("Plaintiff's allegations that he may be exposed to COVID-19 or exposed to infection by a churchgoer while shopping at his local Meijer or using JATA or going out in public to perform essential activities, are conjectural and hypothetical, as opposed to actual or imminent" and do not allege an injury to satisfy standing) (internal quotations, brackets and citations omitted). *See also Balas v. Stanish*, No. CV 3:21-0466, 2021 WL 5500512 at *4 (M.D. Pa. Nov. 23, 2021) (fear of contracting COVID-19 "was speculative and hypothetical" and thus insufficient to establish an injury for standing purposes).

[2] Having concluded that plaintiff has no standing to file this federal lawsuit, the Court finds it unnecessary to address defendant's motion to dismiss the Eighth Amendment claim based on the affirmative defense of qualified immunity. *See* Fed. R. Civ. P. 1 (the Federal Rules of Civil procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

F.3d 1244, 1254-1255 (6th Cir. 1996). As discussed, the undersigned has concluded that plaintiff has no standing to bring his Federal Eighth Amendment claim. If the Court agrees with this conclusion, then there is no reason to retain supplemental jurisdiction over plaintiff's state law claim for gross negligence, and the Court should dismiss the state law claim pursuant to 28 U.S.C. § 1367(c)(3).

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendant's motion to dismiss (ECF No. 37) be **GRANTED** and that this case be terminated.


Dated: August 7, 2023                   /s/ Ray Kent
                                        RAY KENT
                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).